Schindler v. Illinois Central R. Co., 178 Ill. App. 239.

Wanda Schindler, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 17,997.

1. CARRIERS—*duty to provide safe exit.* A carrier is bound to use the highest degree of care and skill reasonably practicable in providing passengers with a safe means of exit from the station.

2. CARRIERS—*unusual accident.* Where plaintiff in a personal injury action, after leaving defendant's train, stumbles on a bolt while passing through the exit turnstile, it is immaterial in determining defendant's liability that thousands of people had passed through without stumbling.

Appeal form the Superior Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed March 13, 1913.

CALHOUN, LYFORD & SHEEAN, for appellant; JOHN C. DRENNAN and EDWARD W. RAWLINS, of counsel.

GALLAGHER & MESSNER, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Mrs. Wanda Schindler, hereinafter called plaintiff, obtained a verdict for $4,500 as damages for personal injuries sustained by her while passing through a turnstile at the 63rd street station of the Illinois Central Railroad Company, hereinafter called defendant. The court required a *remittitur* of $2,000, and entered judgment for $2,500, from which this appeal is taken.

On the day of the accident, August 8, 1909, plaintiff, with her husband, their three children and a friend, was a passenger on one of defendant's trains from Randolph street, in Chicago, running south. The party left the train at the 63rd street station and started toward the street, passing through one of the exit

turnstiles maintained by the defendant, which it is necessary for passengers to use in leaving the station. This turnstile is the ordinary iron turnstile used at the suburban stations of the defendant. It turns in a kind of upright framework supported by iron posts which are bolted or spiked to the floor. It is claimed by plaintiff that just as she turned to enter the turnstile she tripped on one of these bolts which protruded above the floor. The distance from this bolt to the base plate of the pivot-post of the turnstile is 18¾ inches. The bolt protruded one inch above the plate, which is said to be one-half inch in thickness, making the bolt-head 1½ inches above the level of the floor upon which plaintiff walked. She says that when she struck her foot against the obstruction in the floor she fell in the turnstile. That the accident happened substantially in this manner is corroborated by other witnesses and by circumstances in evidence. The jury was justified in accepting this version of the occurrence rather than that contended for by the defendant.

As stated in her original declaration, the theory of the plaintiff was that she had tripped upon a nail or spike projecting from the board floor; but during the trial, prompted thereto, it is said, by the failure of the evidence to support this theory, plaintiff filed an additional count, alleging the presence of the protruding bolt in the passageway, and that it was the obstacle over which she tripped and fell. Counsel for defendant urge that plaintiff's evidence shows that she did not stumble over any nail in the boards, but that she did stumble over the bolt-head, and that this bolt-head was in a position where it was practically impossible for anyone to stumble against it, and that the turnstile with it in that position had been used with safety for many years by thousands of people. We fail to see how this claim affects the liability of defendant. Plaintiff was a passenger, and the defendant was bound to use the highest degree of care and skill reasonably practicable in providing her with a safe means

of exit from the station. From the evidence of the protruding bolt in the very narrow floor space for passageway through the turnstile, the jury was amply justified in concluding that the defendant had failed in its duty and that it was guilty of the negligence charged.

What we have heretofore said as to the cause of the accident disposes of the point that the verdict is manifestly against the weight of the evidence. We see no reason to differ from the finding of the jury on this point.

It is said that the verdict was so excessive as to show that it was the result of passion and prejudice. Plaintiff was 24 years old at the time of the accident and had been married about five years. She had given birth to three children and on the date in question was advanced about three months in pregnancy. She testified that when she fell she struck the left side of her body on the turnstile and received a severe pain. She was taken home and went to bed and suffered a miscarriage the ninth day thereafter, and remained in bed for three weeks. Prior to the accident she was a healthy woman and never had any pains during the menstrual period. Since the accident she has suffered from painful menstruation, and the medical testimony shows the left ovary prolapsed and the uterus retroflexed. The pains from which she suffers are on the left side. The medical testimony is to the effect that a surgical operation will be required to correct the ovarian condition. There is other evidence tending to show a condition of nervous exhaustion and inability to perform the housework which plaintiff had been accustomed to doing. With this evidence before us we are unable to assent to the claim that the jury was improperly influenced in returning its verdict.

Complaint is made of the giving of instruction No. 5, to which it is a sufficient reply to say that this is a passenger case, and the cases cited by the defendant where such an instruction was held improper are not

in point. There was no error in giving this instruction in this case.

Finding no reversible error in the record and holding, as we do, that the verdict was fully justified by the evidence, the judgment will be affirmed.

*Affirmed.*